Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Benjamin Seal
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA  99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 23, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 1:24-CR-002027-SAB-11 |
| | ) | |
| v. | ) | |
| | ) | PLEA AGREEMENT |
| JACENIR AMERZUCA DASILVA | ) | |
| (a/k/a "Serio"), | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard and Benjamin Seal, Assistant United States Attorneys for the Eastern District of Washington, and Defendant, JACENIR AMERZUCA DASILVA ("Defendant"), both individually and by and through Defendant's counsel, David Partovi, agree to the following Plea Agreement:

1.  **Guilty Plea and Maximum Statutory Penalties:**

Defendant agrees to enter a plea of guilty to Count 42 of the Superseding Indictment filed on October 18, 2024, charging Defendant with Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), a Class C felony.

Defendant understands the following potential penalties apply:

    a.    a term of imprisonment of not more than 15 years;

PLEA AGREEMENT - 1

    b.    a term of supervised release of not more than 3 years;

    c.    a fine of up to $250,000; and

    d.    a $100 special penalty assessment.

2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 2

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

4.    <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

PLEA AGREEMENT - 3

5.  Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a.    The right to a jury trial;

    b.    The right to see, hear and question the witnesses;

    c.    The right to remain silent at trial;

    d.    The right to testify at trial; and

    e.    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.  Elements of the Offense:

The United States and Defendant agree that to convict the Defendant of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about April 18, 2024, in the Eastern District of Washington, Defendant knowingly possessed a firearm, to wit: a Sig Sauer Model P226 9mm pistol bearing serial number 47E039915, or a SCCY CPX-2 9mm pistol bearing serial number 882220 or a KAHR Arms TP45 .45 caliber pistol bearing serial number SP1312;
>
> *Second*, the firearms had traveled in interstate or foreign commerce;

PLEA AGREEMENT - 4

> *Third*, at the time Defendant possessed the firearms, he had been convicted of a crime with a potential term of imprisonment exceeding one year; and
>
> *Fourth*, at the time Defendant possessed the firearms, he knew he had been convicted of a crime with a potential term of imprisonment exceeding one year.

7. <u>Statement of Facts and Stipulation</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") was conducting a long-term investigation into the various criminal enterprises run by La Nuestra Familia ("NF") and local Norteño criminal street gangs in the Eastern District of Washington. Through the investigation, Defendant was identified as the leader of the local Norteño set Poncho Vida Loco ("PVL") based primarily in Moses Lake, Washington.

In this role, Defendant was responsible for members of his set, to include investigating members who allegedly had violated the established rules to be a Norteño in good standing. This included participation in the "due process" review of a former PVL member, referred to as Confidential Informant 1. Ultimately, Defendant and the members of his due process team, secured a finding that the

PLEA AGREEMENT - 5

individual believed to be Confidential Informant 1 was "green lit", meaning killed on sight.

Defendant also oversaw the recruitment of juveniles at the juvenile rehabilitation facility dubbed the "Gladiator School". Defendant would also assist other Norteños pay their organizational "taxes", which are a mandatory percentage of profits made via various illicit ventures.

Defendant moved to the Spokane, Washington area and continued in his role, to include facilitating co-defendants paying organizational "taxes" on illicit drug trafficking ventures in the Washington State Penitentiary.

On April 18, 2024, multiple search warrants were executed, to include one at Defendant's Spokane residence. Prior to the execution of the search warrant at Defendant's residence, local law enforcement performed a traffic stop on Defendant's vehicle while he was driving to work. A search warrant was executed on his vehicle and ATF located brass knuckles, a loaded Sig Sauer Model P226 9mm pistol bearing serial number 47E039915 as well as a handwritten book of Norteños deemed "no good", to include who he believed to be Confidential Informant 1.

In Defendant's residence, searching agents located a safe that contained two firearms, a SCCY CPX-2 9mm pistol bearing serial number 882220 and a stolen KAHR Arms TP45 .45 caliber pistol bearing serial number SP1312, as well as rounds of various caliber ammunition along with 12 SIM cards, and expired Washington Identification Card for Defendant, an expired fishing license for Defendant, and court documents for Defendant.

An ATF nexus expert has examined the above-listed firearms and concluded they had traveled in and affected interstate or foreign commerce. Records checks confirmed one firearm was reported stolen.

Prior to Defendant's possession of these firearms, Defendant had been convicted of a crime with a potential term of incarceration exceeding one year, to wit: First Degree Assault with a Deadly Weapon for which he was sentenced to 93 months,

PLEA AGREEMENT - 6

and Defendant was aware of that fact. Defendant also stipulates and agrees that prior to Defendant's possession of the firearms, they had traveled in interstate or foreign commerce.

8. <u>The United States Agrees</u>:

   a. *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Superseding Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing or attempts to, or does, obstruct justice.

   b. *Dismiss Remaining Counts*:

The United States agrees to dismiss the remaining counts of the Superseding Indictment at the time of sentencing, provided Defendant does not breach this plea agreement or attempts to, or does, obstruct justice.

9. <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

   a. *Base Offense Level and Relevant Conduct*:

The United States and Defendant agree to recommend Defendant's base offense level is 20 as he has a prior conviction for a crime of violence. *See* USSG §2K2.1(a)(4).

   b. *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 2-level enhancement as Defendant possessed between 3-7 firearms. *See* USSG §2K2.1(b)(1)(A). The United States and Defendant agree to recommend a 2-level enhancement as Defendant

PLEA AGREEMENT - 7

possessed a stolen firearm. *See* USSG §2K2.1(b)(4)(A). The United States and Defendant agree to recommend a 4-level enhancement as Defendant possessed the firearms in connection with another felony offense. *See* USSG §2K2.1(b)(6)(B).

The United States and Defendant agree no other specific offense characteristics apply. *See generally* USSG §2D1.1(b).

      c.    *Role Adjustments*:

The United States and Defendant agree to recommend a 2-level enhancement for his role as a leader, organizer, manager, or supervisor in any criminal activity. *See* USSG §3B1.1(c).

      d.    *Obstruction of Justice*:

The United States and Defendant agree to recommend a 2-level enhancement as Defendant willfully attempted to obstruct justice. *See* USSG §3C1.1.

      e.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is

PLEA AGREEMENT - 8

commits, is charged with, or convicted of, any criminal offense to include obstruction of justice, or if Defendant tests positive for any controlled substance.

   f. *Agreements Regarding Representations to the Court*:

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

   i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

   ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

   iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

   iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

   v. The United States and Defendant may each respond to any arguments presented by the other;

PLEA AGREEMENT - 9

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

g.  *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

h.  *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

10.  <u>Length of Incarceration[1]</u>:

The United States will recommend a term of incarceration within the advisory guideline range as calculated by the United States. Defendant is free to recommend any term of incarceration he deems appropriate.

---

[1] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 11

11. <u>Supervised Release</u>:

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer;

    b. that Defendant not associate with any known gang members without first obtaining permission of the Probation Officer; and

    c. that Defendant not have any contact with any witnesses in this case.

12. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

13. <u>Criminal Fine</u>:

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

PLEA AGREEMENT - 12

14. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense, tests positive for any controlled substance, and/or obstructs, or attempts to obstruct, justice.

16. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives his right to appeal his conviction and/or sentence.

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any

PLEA AGREEMENT - 13

circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

18. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

PLEA AGREEMENT - 14

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R Barker
Acting United States Attorney

_____ for Caitlin Baunsgard    4/23/25
Caitlin Baunsgard                                                    Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____    4-23-25
JACENIR AMERZUCA DASILVA (a/k/a "Serio")    Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to

PLEA AGREEMENT - 15

plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____  4-23-25
David Partovi                    Date
Attorney for the Defendant

PLEA AGREEMENT - 16